IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Rosenna Mays Brown,                     )
                                        )
          Plaintiff,                    )
                                        )    Civil Action No. 2:11-2085-RMG
     vs.                                )
                                        )
Michael J. Astrue, Commissioner         )
of Social Security,                     )    **ORDER**
                                        )
          Defendant.                    )
                                        )
_____ )

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying her claim for disability insurance benefits. In accord with 28 U.S.C. § 636(b) and Local Civil Rule 73.02, D.S.C., this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation on November 1, 2012, recommending that the Commissioner's decision be reversed and remanded. (Dkt. No. 20). The Commissioner filed objections to the Magistrate Judge's report and Plaintiff filed a reply. (Dkt. Nos. 21, 23). For reasons set forth below, the Commissioner's decision is reversed and remanded for further action consistent with this order.

### Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is

-1-

made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow . . . that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *See Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. 20 C.F.R. § 404.1545. This includes the duty to "evaluate every medical opinion [it] receive[s]." *Id.* § 404.1527(c). Deference is generally given to the opinions of treating physicians of the claimant, based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical

-2-

findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2); *see also Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003) (recognizing that, "in determining whether a claimant is entitled to Social Security disability benefits, special weight is accorded opinions of the claimant's treating physician").

Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of factors, including the examining relationship, the treatment relationship, length of treatment, nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician is a specialist in the area for which he gave an opinion. *Id.* §§ 404.1527(c)(1)-(5). As explained in the Commissioner's Social Security Ruling 96-2P, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 . . . ." SSR 96-2P, 1996 WL 374188, at *4 (July 2, 1996). Further, the Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. *Id.* at *5.

It is also well settled that, because some symptoms, particularly complaints of pain, may "sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone," an adjudicator in a Social Security disability proceeding must carefully evaluate the claimant's complaints of symptoms based upon "the entire case record", which includes, in addition to the objective medical evidence, the findings, diagnoses and other opinions of the treating or examining physicians. SSR 96-7P, 1996 WL 374186, at *1 (July 2, 1996). Thus, a claimant's

complaints of pain or her statements about the effect that pain has on her ability to work"may not

be disregarded solely because they are not substantiated by objective medical evidence." *Id.*

## Discussion

Plaintiff, who was 45 years of age at the time of the alleged onset of her disability, asserts

a claim for disability insurance benefits based upon a variety of impairments, including severe spinal

cord related pain and weakness, obesity and depression secondary to her severe pain. The ALJ found

that Plaintiff's severe impairments included "degenerative disc disease of the lumbar spine; obesity;

and depression" and recognized that Plaintiff's impairments caused significant limitations on her

occupational functions. Transcript of Record ("Tr.") at 22, 25-28. The ALJ concluded, however,

that Plaintiff had a residual functional capacity to perform light work and, thus, did not satisfy the

requirements for disability under the Social Security Act. Tr. at 25-29.

The record before the Court reveals that Plaintiff had a history of back-related pain and

treatment, the symptoms of which were markedly worsened by complications from an epidural

injection provided on December 3, 2008, to provide relief for the patient's back pain. Tr. at 310-324.

Plaintiff underwent a six day hospitalization after she experienced profound lower extremity

weakness and numbness immediately following the December 2008 epidural injection, and she made

significant improvement during her hospitalization that allowed her to advance from a near paralytic

condition to some limited movement of her hip and leg. Tr. at 312. While hospitalized for

complications from the epidural injection, Plaintiff began treatment with Dr. John Blevins, a

fellowship-trained board-certified neurologist.[1]  Following her discharge from the hospital on

---

[1] The Court takes judicial notice that Dr. Blevins was the chief resident in neurology at
Temple University Hospital and a clinical fellow in neurophysiology at the University of North
Carolina-Chapel Hill. *See* State of Georgia, Composite State Board of Medical Examiners,

December 9, 2008, Dr. Blevins continued to treat the Plaintiff over the ensuing several years. In the course of his care for Plaintiff, Dr. Blevins took detailed histories, conducted numerous physical examinations of the patient, performed various clinical assessments and tests, and ordered numerous diagnostic studies. Tr. at 150-52, 474-75, 562-63, 565-68. Dr. Blevins' office examinations consistently demonstrated lower extremity weakness and numbness, radiating pain from the back to the left leg, and complaints of severe pain. *Id.* He also documented Plaintiff's consistent left leg limp and use of a cane since the complications of the December 2008 spinal injection. Tr. at 475, 562-63. Dr. Blevins ordered and/or reviewed several MRIs of the lumbar, thoracic and cervical spine. While these radiological studies did not demonstrate herniated discs or obvious spinal cord impingement, they did contain various abnormalities, including disc protrusion and early degeneration in the lower lumbar and upper sacral spine (L4-5 and L5-S1), and a lesion, likely a hemangioma, at T6. Tr. at 311, 539-40, 667. Dr. Blevins also ordered several EMGs and nerve conduction studies, none of which demonstrated abnormalities that definitively explained the patient's severe pain and lower extremity weakness or Dr. Blevins clinical findings. Tr. at 165-66, 341-43, 546-47, 684-85.

Based upon a full review of his physical assessments, patient history and clinical and diagnostic studies, Dr. Blevins diagnosed Plaintiff with several distinct spinal disorders: lumbar radiculopathy, lumbar disc degeneration, and T6 hemangioma. Tr. at 150-51, 156-57, 475, 562-63, 567. Dr. Blevins documented a broad range of Plaintiff's symptoms consistent with those diagnoses,

https://www.gaphysicianprofile.org/profile.ShowProfileAction.action?lic_nbr=058855 (last visited Jan. 16, 2013); *see also 23-24 94th St. Grocery Corp. v. New York City Bd. of Health*, 685 F.3d 174, 183 n.7 (2d Cir. 2012) (taking judicial notice of a .org website); *Myers v. Kaufmann*, No. 2:12-cv-2081, 2010 WL 4338097, at *2 n.2 (D.S.C. Sept. 16, 2010) (taking judicial notice of factual information posted on a government website).

including balance problems, lower extremity weakness and numbness, unstable walking, and chronic pain. Tr. at 150-51, 156, 475, 562-63, 566-67. He concluded that Plaintiff's condition imposed significant limitations, including the need for an assistive device (a cane) to walk any distance, no walking over one half block, no lifting of more than 10 lbs., no repeated bending or twisting, and avoidance of steps. Tr. at 156-57.

Plaintiff was also under the active care and treatment during this period of her family physician, Dr. Charlton Pickett. Based upon his numerous physical examinations of Plaintiff, Dr. Pickett described significant symptoms of spinal cord disorder, including severe pain, lower extremity weakness, numbness and tingling, radiating pain from the spine to Plaintiff's buttocks and leg, and localized tenderness in the lumbar and sacral spine. Tr. at 352, 368, 428, 680, 690. Dr. Pickett opined that Plaintiff's condition disabled her from work, although he did not provide the detailed functional assessments and limitations produced by Dr. Blevins.[2] Dr. Pickett's physical examination findings are consistent with those of Dr. Blevins, and corroborate Dr. Blevins' finding that claimant's vocational limitations were produced by Plaintiff's spinal cord abnormalities.

The record includes two chart reviews concerning Plaintiff's spinal cord abnormalities. Dr. John Weston noted Plaintiff's persistent pain, weakness, left leg limp, and difficulty standing and carrying, which he characterized as "credible." Tr. at 499, 503. He found, however, that Plaintiff could occasionally lift 20 lbs., stand or walk 6 hours per day, and had unlimited pull or push function. Tr. at 499. Dr. Weston did not examine or treat Plaintiff and offered no basis for his findings that the patient could lift greater than 10 lbs. and could stand or walk 6 hours per day.

---

[2] A conclusory statement by a treating physician that a claimant is disabled is not regarded as a medical opinion in a Social Security proceeding because that decision is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1).

A second chart review was provided by Dr. John Kukla. He also found Plaintiff's symptoms of difficulty sitting, standing, lifting and carrying "credible" and noted her history of "terrible back pain." Tr. at 673. Dr. Kulka placed significant limitations on Plaintiff's vocational functioning, but found, identical to Dr. Weston, that she could occasionally lift 20 lbs. and stand 6 hours per day. Tr. at 499. Dr. Kulka did not examine or treat Plaintiff and provided no evidentiary basis for his findings that Plaintiff could lift more than 10 lbs. or stand or walk 6 hours per day.

The dispute present in this record among the various spine-related medical opinions is a relatively narrow one. All recognize that Plaintiff has spinal cord abnormalities that affect her vocational functioning, including significant limitations on lifting, standing and walking. Dr. Blevins, the treating professional "most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)" and who has "a unique perspective to the medical evidence that cannot be obtained from the objective medical alone", has assessed his patient to have limitations such that she is unable to lift greater than 10lbs. and has only a limited ability to walk. 20 C.F.R. § 404.1527(c)(2); Tr. at 156-57. Dr. Blevins' physical findings upon which he bases these limitations are consistent with the conclusions reached by Plaintiff's other long-serving treating physician, Dr. Pickett. Two chart reviewers, who have never laid eyes on the patient, opine that she does indeed have significant vocational limitations but can lift up to 20 lbs. and stand or walk up to 6 hours per day. They offer no specific evidentiary support for their lifting opinion, and the finding that Plaintiff can stand or walk 6 hours per day appears internally inconsistent with each of their findings that her complaints of difficulty standing were "credible." Tr. at 499, 504, 669, 673.

Faced with this conflicting evidence in the record, the ALJ was obligated to weigh the opinions of Plaintiff's treating physicians pursuant to "all of the . . . factors" set forth in

2:11-cv-02085-RMG    Date Filed 01/18/13    Entry Number 26    Page 8 of 10

§ 1527(c). This includes generally giving more weight to opinions of examining and treating physicians, particularly where there has been a lengthy physician-patient relationship. 20 C.F.R § 1527(c)(1), (2). Other factors that must be considered in weighing the opinions of a treating physician include whether the physician is a specialist ("we generally give more weight to the opinion of a specialist"), the consistency of his opinions, and the support found for his opinions in the record, particularly "medical signs and laboratory findings." *Id.* § 1527(c)(3)-(5).

The ALJ gave "little weight" to the opinions of Dr. Blevins and Dr. Pickett and "great weight" to the opinions of the chart reviewers, Drs. Weston and Kukla. Tr. at 27. In the course of reaching those conclusions, the ALJ dealt only with the issue of supportability[3] and made no reference to the treating physicians' long history with the patient, numerous physical examinations, intimate knowledge of her medical condition, the consistency of their findings or the fact that, as a board-certified neurologist, Dr. Blevins had specialized knowledge in the area of Plaintiff's spinal cord abnormalities. Further, the ALJ did not address the narrow differences that actually existed between the chart reviewers and the treating physicians—mainly over the degree of weight limitations and ability to stand or walk great distances—and the absence of any specific justification

---

[3] In addressing the issue of the supportability of the opinions of Dr. Blevins, the ALJ, in the Court's view, took a rather myopic approach to the record. For example, the ALJ mentioned in his decision the consistently normal reports from the nerve conduction studies, the unchanged MRI reports, and the therapeutic benefit Plaintiff received from the TENS unit and medication. Tr. at 27. While consideration of these aspects of the medical record is certainly appropriate, there is a significant amount of additional material information in the record that should also be weighed, particularly the consistent clinical findings of Plaintiff's treating physicians that she endured chronic pain (that persisted despite various treatments and medications) and had lower extremity weakness, difficulty standing and difficulty walking. Further, while it is accurate to state (as the ALJ did) that the MRI results were unchanged, they did reveal certain spinal cord abnormalities that all medical sources felt produced significant vocational impairments. It is important for the fact finder in a Social Security proceeding to endeavor to consider and weigh the full medical record rather than to identify selective facts to support a particular conclusion.

-8-

2085-RMG    Date Filed 01/18/13    Entry Number 26    Page 9 of 10

by the chart reviewers for their more generous assessment of Plaintiff's functional abilities.

In the final analysis, the ALJ essentially turned the regulatory-mandated deference for treating physicians on its head, disregarding the standards set forth for weighing those opinions under § 1527(c) and giving priority to non-examining, non-treating physicians whose basis for their opinions on the Plaintiff's lifting, standing and walking abilities is not disclosed in their reports. Under these circumstances the Court finds reversal and remand are necessary so that the fact finder may evaluate the opinions of treating physicians in accord with *all* of the standards set forth in § 1527(c). Further, in reviewing the weight to be given to the chart reviewers, the ALJ should remember that he should generally "give more weight to the opinion of a source who has examined [the claimant] than the opinion of a source who has not examined [the claimant]" and "the more knowledge a treating source has about [the claimant's] impairment(s) the more weight [the ALJ is expected] give to the source's medical opinion." 20 C.F.R. § 1527(c)(1), (c)(2)(ii). The ALJ is directed on remand to revisit the medical opinions of Plaintiff's treating physicians relating to both the Plaintiff's Residual Functional Capacity and the 1.04 Listing determination utilizing the standards set forth in § 1527.[4]

### Conclusion

Based upon the foregoing, the Court hereby **REVERSES** the decision of the Commissioner and **REMANDS** this matter for further proceedings consistent with this opinion pursuant to Sentence Four of 42 U.S.C. § 405(g).

---

[4] To the extent that the ALJ determines that the opinions of Dr. Pickett are not adequately explained in the record, Dr. Pickett could be asked to supplement his records with a fuller statement of his opinions, particularly those relating to Plaintiff's capacity to lift, walk and stand.

-9-

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Judge

January 18, 2013
Charleston, South Carolina